UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA                CRIMINAL NO. 06-50103

versus                                  JUDGE STAGG

RONALD K. AMEND                         MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

Before the court is Defendant's **Motion to Suppress Evidence (Doc. 40)**. Defendant moves the court to suppress all evidence seized related to Counts 2, 3 and 6. An evidentiary hearing was scheduled for February 27, 2007 (Doc. 36) but, at the request of defense counsel and with the concurrence of counsel for the Government, the hearing was cancelled as unnecessary. For the reasons that follow, it is recommended that Defendant's motion be denied.

**Introduction**

Defendant is charged in a superceding indictment (Doc. 29) with possession of unregistered firearms (Counts 1, 2 and 6), dealing firearms without a license (Count 3), and possession of unregistered machine guns (Counts 4 and 5). The motion to suppress the evidence related to Counts 2, 3 and 6 argues that: (1) ATF illegally arrested Defendant without a warrant on May 16, 2006 for dealing in firearms without a license; (2) ATF then illegally searched Defendant's vehicle without a warrant and seized a rifle that was not contraband in plain view; and (3) ATF made misrepresentations to the undersigned magistrate judge in an application for a warrant to search Defendant's home, where agents

illegally seized a shotgun which was not listed in the warrant and was not contraband in plain view.

**The Issues**

Defendant was the holder of two Federal Firearm Licenses (FFLs) and was a Special Occupational Taxpayer (SOT) as a manufacturer of National Firearm Act (NFA) firearms. Following an investigation into suspected violations of federal firearm laws, Defendant executed an agreement on December 8, 2005 surrendering his FFLs "in lieu of facing criminal prosecution...." Doc. 42-1, Ex. A. The document states that Defendant's records were to be submitted to an investigator and that Defendant would be given a prescribed period to liquidate his inventory.

In March 2006, ATF agents learned that Defendant had agreed to sell two NFA short-barreled rifles to two Caddo Parish Sheriff's Deputies. The deputies, at the request of ATF, made arrangements to meet with Defendant to complete the transaction at a shooting range in Shreveport. When Defendant arrived, he was confronted by Agent Gilpin, who advised Defendant of his <u>Miranda</u> rights. According to the Government's brief, Defendant then admitted that: (1) he did not have FFLs; (2) he was at the shooting range to sell two firearms; and (3) firearms were present in his vehicle. Agent Gilpin arrested Defendant and searched Defendant's vehicle. The vehicle was then inventoried and impounded. Later that day, a federal search warrant was obtained to search Defendant's residence.

It is the legal significance of the FFL surrender agreement that is the central focus of Defendant's motion to suppress. As stated in Defendant's Reply Brief (Doc. 44): "The validity of all of the searches and seizures at issue depend on whether defendant's federal firearm licenses were valid." Defendant argues that "his licenses had not expired and were not revoked according to legal procedures."

**Defendant's Arrest**

Defendant argues that Count 3 (dealing firearms without a license) and his warrantless arrest on May 16, 2006 are based on ATF's mistaken theory that ATF's prior improper confiscation of Defendant's licenses constituted a revocation of those licenses. Defendant argues that revocation of a FFL requires a formal process that was never followed in this case. Therefore, Defendant argues, his licenses were never properly revoked and Defendant could not, as a matter of law, violate the prohibition on engaging in business without a license. Defendant thus argues that his arrest on that charge (and the search incident to that arrest) was unlawful.

Defendant's arguments overlook the procedures set forth in 27 C.F.R. § § 478.57 and 478.127 for the voluntary surrender of FFLs. A formal revocation proceeding was not necessary in this case because Defendant surrendered his FFLs and agreed to discontinue his business. If Defendant's argument is accepted, then ATF could never accept the surrender of a person's license, and it would be required in every case, regardless of the willingness of

the license holder to surrender his license voluntarily, to institute formal revocation proceedings. Such an argument borders on the absurd.

Defendant surrendered his FFLs to ATF on December 8, 2005. Whether the surrender of the license is enforceable and whether Defendant's activities after that date violated federal firearms laws are questions that go to guilt or innocence and are better left for trial. But guilt beyond a reasonable doubt need not be proved to uphold the arrest and related searches. "The Constitution does not guarantee that only the guilty will be arrested." Baker v. McCollan, 443 U.S. 137, 145 (1979). The surrender of the FFLs, and Defendant's activities following that surrender, support a finding that the agents had probable cause to believe that Defendant was dealing firearms without a license. Michigan v. DeFillippo, 443 U.S. 31, 37 (1979); Florida v. White, 526 U.S. 559, 565 (1999). See also United States v. Santiago, 319 F.3d 336, 341 (5th Cir. 2002)(*arguable* violation of law provided probable cause for traffic stop even when it was "doubtful" that a conviction could have been obtained).

Defendant also makes a conclusory argument that the arrest and searches are unlawful because he signed the FFL surrender agreement under duress. While the surrender of Defendant's license was "in lieu of facing criminal prosecution," there is no evidence of duress in the record that would vitiate the validity of that document. The undersigned set an evidentiary hearing on the motion to suppress, which provided Defendant an opportunity to present evidence on this claim, but the hearing was cancelled as unnecessary at the request

of defense counsel. After the hearing was cancelled, counsel for Defendant sent a letter to the undersigned dated March 15, 2007. The letter did not request that the evidentiary hearing be reset. Instead, it simply advised the court of Defendant's intent to file a civil suit against the Government seeking to annul the agreement on the basis of fraud, error and duress. The undersigned expresses no opinion on the propriety of such a civil action. It is sufficient for purposes of the motion to suppress to find, as the undersigned explains above, that Defendant's alleged violation of the facially valid agreement provided Agent Gilpin with probable cause to arrest Defendant.

Defendant also contends that his receipt of two firearms cannot, as a matter of law, constitute the manufacture of firearms or the dealing in firearms as a regular course of trade or business. Defendant further contends that the two "firearms" described in Count 3 are not "firearms" as defined by law, but are only *lower receivers* of AR-15 rifles. In support of this argument, Defendant points to a 1971 ATF memorandum discussing "some difficulty in trying to make cases against persons possessing only the lower part of a receiver" of an M-16 machine gun, which is similar to an AR-15.

A motion to suppress is not the proper vehicle to litigate these issues. Whether the firearms (or lower receivers) in Defendant's vehicle constitute "firearms" under the law, and whether Defendant's activities constitute engaging in the business of dealing firearms, are also questions better left for resolution at trial after all relevant facts have been developed. Based on the prior surrender of Defendant's licenses, the agents had probable cause to

believe that Defendant was dealing firearms without a license. Therefore, his arrest was not illegal.

**Search of Defendant's Vehicle**

Defendant offers several arguments in support of his argument that the warrantless search of his vehicle was unlawful: (1) the firearm was not contraband in plain view because it was not immediately apparent to the agents that it was unregistered; (2) the firearm was, in fact, registered, and agents could have determined that before seizing it; and (3) the search was not incident to a lawful arrest.

Defendant's arguments regarding the alleged unlawfulness of his arrest have already been addressed and rejected above. His other arguments regarding the search of his vehicle also fail because the agents had probable cause to believe the vehicle contained contraband and because the search of the vehicle was a proper search incident to Defendant's arrest.

ATF agents had received information from two Caddo Parish Sheriff's Deputies that they had made arrangements to purchase firearms from Defendant. The agents knew that Defendant had previously surrendered his FFLs, which would lead a reasonable agent to conclude that Defendant was not licensed to deal firearms. The agent's probable cause that Defendant's vehicle contained evidence of a crime justified the warrantless search. Carroll v. United States, 267 U.S. 132, 149 (1925); Maryland v. Dyson, 527 U.S. 465, 466-68 (1999).

After Defendant arrived at the gun range, he was confronted and arrested by Agent Gilpin. When a policeman has made an lawful arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. New York v. Belton, 453 U.S. 454, 460-61 (1981). Defendant's arrest was lawful, and the contemporaneous search of the passenger compartment of his vehicle was a proper search incident to that arrest. Accordingly, the court need not address the Government's alternative argument that the search of the vehicle was a valid inventory search.

**Search of Defendant's Home**

Count 6 charges Defendant with possessing a 14" short-barreled shotgun, which was seized from Defendant's home during the execution of a federal search warrant. Defendant argues that the warrant was obtained by ATF through misrepresentations and was not supported by probable cause. Defendant also argues that, by authorizing a search for unregistered firearms and related items without any specific context, the warrant was an unlawful general warrant. Defendant further argues that the short-barreled shotgun was not specifically listed in the warrant and was not contraband in plain view because its *unregistered status* was not immediately apparent to the agents. Defendant's Brief, pp. 13-14; Defendant's Reply, pp. 8-9.

The federal search warrant for Defendant's home was issued on May 16, 2006. The application set forth probable cause that evidence of dealing in firearms without a license was located inside Defendant's home. The application described that evidence as:

>Unregistered and illegally converted NFA firearms, firearm parts, tools and books/plans used to modify firearms, computer hardware and disks used to facilitate the sale and receipt of firearms, photos and computerized media containing photos of NFA firearms, records related to the sale, purchase or other disposition of firearms, records related to unlicensed dealing in firearms and indicia of possession of the premise[s].

Agent Gilpin's affidavit in support of the search warrant details the following:

- Agents received information in December 2004 that Defendant was illegally receiving imported firearms without utilization of an importer in violation of United States importation laws. ¶ 3.

- Defendant attempted to conceal his illegal acts by falsifying registration documents. ¶ 5.

- ATF was notified in July 2005 that Defendant sold a silencer to someone on the internet, but Defendant never delivered the silencer. ¶ 6.

- An investigation resulted in a federal search warrant for Defendant's residence. The search, which was executed on August 23, 2005, resulted in the seizure of unregistred NFA firearms. ¶ 8.

- The United States Attorney's Office elected to forego criminal prosecution in exchange for Defendant's voluntary surrender of his FFLs and his SOT on December 8, 2005. ¶ 9.

- Defendant was given a grace period of 30 days to divest himself of those firearms in his possession that could only be possessed by a licensed dealer. The grace period was extended as Defendant failed to liquidate his inventory. ¶ 10.

- Nevertheless, ATF learned that Defendant continued to acquire firearms. ¶ 11.

- ATF met with Defendant on February 23, 2006 and advised Defendant that he was absolutely prohibited from any further activity as a FFL. Defendant was also told that any further unlicensed dealing or manufacturing activities would result in his prosecution. ¶ 12.

- During the February 2006 meeting, Defendant abandoned several additional unregistered NFA firearms to ATF. ¶ 13.

- Several weeks later, in connection with an unrelated investigation, Agent Gilpin learned that two Caddo Parish Sheriff's Deputies were in the process of purchasing NFA short-barreled rifles. When Gilpin asked the deputies for the name of the dealer they were using, the deputies identified Defendant. One of the deputies recounted a visit to Defendant's residence where the deputy observed several NFA firearms, including fully automatic firearms and silencers. ¶¶ 14-16.

- Defendant arranged to meet the deputies at a Shreveport gun range so that the deputies could shoot various rifle configurations. Once a configuration was agreed upon, Defendant discussed prices with the deputies. ¶¶ 17-18.

- Defendant then accepted from the deputies the ATF paperwork and fee to cover the registration of the weapons. Defendant submitted the paperwork to the NFA branch of the ATF. ¶ 19.

- On May 15, 2006, the deputies met Defendant at his residence to observe the two firearms that Defendant built for them. They also observed within Defendant's residence numerous firearms in various states of assembly, including several silencers and what was believed to be machine guns. Defendant and the deputies agreed to meet at the gun range the next day. ¶ 23.

- On May 16, 2006, Defendant was detained upon his arrival at the gun range and the two rifles were seized from his vehicle. ¶ 25.

- Based on Defendant's continued criminal activity, it is more probable than not that records related to the purchase of parts to assemble the two unregistered firearms, along with records related to the unlicensed dealing in firearms, are located within Defendant's residence. ¶ 27.

- It is impossible to determine if a firearm has been converted from semi-automatic to full-automatic configuration without physically examining it. ¶ 28.

- The scope of the search includes the physical examination of all firearms located in Defendant's residence for full automatic capability. ¶ 29.

! Serial numbers for the weapons and silencers will be compared to NFA lists to determine if the items are legally possessed by Defendant. ¶¶ 30-31.

! There is a strong probability that there are unregistered and illegally converted NFA firearms, in addition to the other items sought in the warrant, located in Defendant's residence. ¶ 32.

The Government "categorically" rejects Defendant's arguments that Agent Gilpin misrepresented facts in the affidavit, but the Government does not offer any particular response or rebuttal to that argument. Government's Response, ¶ 18. Nevertheless, a review of Defendant's misrepresentation-related contentions shows that they relate to many of the same arguments reviewed and rejected above in connection with the legality of Defendant's arrest, i.e., whether the surrender agreement constituted a proper revocation of Defendant's licenses and whether Defendant was engaging in the business of dealing firearms without a license.

Defendant also argues that the warrant application lacked probable cause that any unregistered NFA firearms were located at Defendant's residence. According to Defendant, ATF knew that Defendant had *registered* NFA firearms on the premises. Defendant contends that the warrant application's request for a physical examination of firearms and a comparison of their serial numbers to a list maintained by the NFA constituted an impermissible fishing expedition.

The warrant application, as summarized above, detailed Defendant's prior illegal activities regarding firearms and provided ample probable cause that unregistered firearms and evidence of Defendant's dealing firearms without a license were located in Defendant's

residence. Based on that probable cause, the undersigned authorized a search of Defendant's home for NFA related firearms and evidence related to Defendant's dealing firearms without a license. Thus, the warrant was not an impermissible general warrant, and the items sought in the warrant were described with sufficient particularity. United States v. Peden, 891 F.2d 514, 518 (5th Cir. 1989)(search warrant left little doubt as to the type of material to be seized and provided the officers with a sufficiently objective standard to follow in conducting the search); United States v. Kimbrough, 69 F.3d 723 (5th Cir. 1995)(where detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized).

Defendant also argues that the 14" short-barreled shotgun seized during the search was not "contraband in plain view." According to Defendant, the agents could not observe the gun's alleged unregistered status at the time of the search. Defendant argues that a firearm is not contraband in plain view if one must examine its serial number.

Defendant does not dispute that three of the four requirements applicable to the plan view exception are present in this case. See United States v. Santiago, 410 F.3d 193, 200-201 (5th Cir. 2005). The federal search warrant authorized agents to enter Defendant's residence to search for firearms and firearm parts; therefore, there is no issue as to whether the agents had a lawful right to be in the place where the short-barreled shotgun was discovered. The agents also were in a position to lawfully secure access to the weapon. Furthermore, Defendant does not dispute that the short-barreled shotgun was located within his residence in plain view to agents executing the search warrant. Instead, Defendant argues that the

alleged *unregistered status* of the short-barreled shotgun was not immediately apparent to the agents during the search. However, as explained below, Defendant's interpretation of the "immediately apparent" requirement of the plain view doctrine is too restrictive given the nature of a short-barreled shotgun and the nexus of the short-barreled shotgun to the other items sought in the search warrant.

In support of his argument regarding the unregistered status of the short-barreled shotgun, Defendant relies primarily on three cases that did not involve firearm investigations. In the first case, United States v. Gray, 484 F.2d 352 (6th Cir. 1973), police searched the defendant's residence in connection with an alleged moonshine operation. The warrant authorized the seizure of intoxicating liquors and any apparatus for manufacturing intoxicating liquors. During the search, rifles were found inside a closet. The rifles were removed to another room, their serial numbers copied down and then the rifles were returned to the closet. Defendant was later charged with violations of federal firearms laws. The court held that the seizure of the serial numbers was illegal because the incriminating nature of the items was not immediately apparent. The rifles were not contraband; there was no nexus between the rifles and the crimes of selling or possessing intoxicating liquor without a license; and the officers did not know that the rifles were evidence of any other crimes. It was only after the officers left the defendant's premises and ran the information through the NCIC that they learned the guns were stolen.

Defendant also cites United States v. Savides, 664 F.Supp. 1544 (N.D. Ill. 1987), which involved a search of a residence for evidence of an illegal gambling operation. During

that search, the officers located several guns. The serial number on one gun had been removed. Four other guns had not been properly registered. As to the first gun, its illegal nature was readily apparent, and it was properly seized. However, there was no evidence as to whether the officers learned of the illegal nature of the four unregistered firearms while they were still located inside the residence. Because there was no evidence on that point and because the warrant did not specify the seizure of firearms, the court suppressed the four remaining guns.

In United States v. Szymkowiak, 727 F.2d 95 (6th Cir. 1984), police officers obtained a warrant to search the defendant's residence for specified items of jewelry and a television set. During the search, the officers discovered and seized two firearms. The officer could not tell whether the guns were illegal, so they contacted an ATF agent who responded to the scene. The agent said he could not determine whether the guns had been converted to fully automatic without disassembling the weapons. The officers nevertheless seized the weapons. The Court of Appeals held that the firearms should have been suppressed. There was no nexus between the weapons and the items particularized in the search warrant. The ATF agent was not able to determine at the scene, without disassembling the weapons, whether the firearms had been unlawfully converted to fully automatic. Thus, the illegal nature of the firearms was not immediately apparent to the officers.

In this case, there is a direct nexus between a 14" short-barreled shotgun and the items sought in the search warrant. The warrant authorized a search for and seizure of unregistered NFA firearms and information related to Defendant's alleged dealing in firearms without a

license. The warrant authorized the officers to enter Defendant's residence to search for the very items that were seized. The agents did not come upon the shotgun illegally in connection with a search for some other type of contraband. See United States v. Lacey, 530 F.2d 821 (8th Cir. 1976); Soverign News Co. v. United States, 690 F.2d 569 (6th Cir. 1982); United States v. Wolfe, 375 F. Supp. 949 (E.D. Penn. 1974).

Furthermore, the short-barreled nature of the shotgun would be apparent to an ATF agent. See United States v. Truitt, 521 F.2d 1174 (6th Cir. 1975)(upholding seizure of unregistered sawed-off shotgun discovered in connection with a lawful search for evidence of illegal gambling); United States v. Wade, 30 Fed.Appx. 368 (6th Cir. 2002)("[F]or purposes of the plain view doctrine, the immediately apparent intrinsically incriminating characteristic of a sawed-off shot gun is the length of the barrel. That characteristic alone provides probable cause for a police officer to believe that the weapon is illegally possessed."). See also United States v. Cecil, 457 F.2d 1178, 1181 (8th Cir. 1972)(court characterized defendant's argument as "specious" that without knowledge of non-registration the officers could not lawfully seize a sawed-off shotgun; a "requirement that an officer must know the fact of non-registration before seizing a contraband firearm would stultify the enforcement of the National Firearms Act."), cited with approval in United States v. Woods, 560 F.2d 660, 664-665 (5th Cir. 1977)(upholding seizure of a sawed-off shotgun even though the officer saw only a portion of the barrel of the gun protruding out from under a cabinet, and even though the officer admitted that the barrel could have been mistaken as a pipe).

**Conclusion**

Some of the issues raised in Defendant's motion to suppress go to the heart of guilt or innocence and are not appropriate to litigate, in the first instance, in a motion to suppress. Whether Defendant's activities following execution of the surrender agreement violated federal firearms laws should await determination at trial once the factual record is fully developed. As for the Fourth Amendment issues that can be resolved prior to trial, the undersigned has carefully reviewed the parties' briefs, as well as the underlying warrant application and affidavit, and finds that Defendant's arrest and the subsequent searches of his vehicle and residence were supported by probable cause. All of the evidence seized during the challenged searches was seized lawfully.

Accordingly;

**IT IS RECOMMENDED** that Defendant's **Motion to Suppress (Doc. 40)** be **denied.**

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Cr. P. 59(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Cr. P. 59(b)(2). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 20th day of March, 2007.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE